UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                         Case No. 22-cv-708-pp

BARBARA DELAP, JOHN SCHETTLE,
BELINDA SCHRUBBE, and DOES,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR LACK OF JURISDICTION**

---

Joshua Howard, who is incarcerated at Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants breached a settlement reached in a previous case and violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 23, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $3.28. Dkt. No. 5. The court received that fee on July 19, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff hah sued Barbara DeLap, who was the dental director of the Wisconsin Department of Corrections (DOC) Bureau of Health Services (BHS); Dr. John Schettle, who was a dentist at Waupun Correctional Institution (Waupun); Belinda Schrubbe, who was the Health Services Unit (HSU) manager at Waupun; Does 1-4, medical professionals at Green Bay Correctional Institution (Green Bay) referred to as "MPAAs"; and Does 5-8, who work in Green Bay's business office. Dkt. No. 1 at 1, ¶¶13, 29 and 30.

3

The plaintiff describes his claims as follows:

> This action raises a breach of settlement in E.D. Case No. 14-cv-1157, which alleged a deliberate indifference to the plaintiff's dental needs and retaliation after he complained about the delay. In addition to the original defendants' failure to provide the agreed upon treatment or to pay for the partial treatment initially provided, this action alleges that Does at the plaintiff's institution retaliated against him for complaints/lawsuits filed against HSU and the Business Office by taking him off the schedule/list to be seen by outside dental providers and failing to properly process incoming bills from outside dental providers so that they would not be paid.

Dkt. No. 1 at ¶1. The plaintiff alleges that in 2014, he filed Case No. 14-cv-1157, alleging that Dr. Schettle identified cavities in 2002 and 2010, filled only two of his several cavities in 2011 and that, while still waiting for fillings in 2014, one of the ignored cavities caused the plaintiff's molar to break apart; while Schettle repaired the tooth, he did not fill any of the several cavities that the plaintiff already had been waiting years to have treated. Id. at ¶2. The plaintiff states that on September 19, 2018, this court denied the defendants' motion for summary judgment in Case No. 14-cv-1157, finding that there was evidence that would allow a jury to find that Schettle, Schrubbe and DeLap were deliberately indifferent to the plaintiff's serious dental needs and that Schrubbe retaliated in response to complaints by removing the plaintiff from the dental waiting list. Id. at ¶3.

The plaintiff alleges that in April 2019, the parties signed a settlement agreement in Case No. 14-cv-1157 in which the defendants agreed:

> within 90 days to refer Howard to a non-DOC community dentist for a dental examination and treatment. DOC agrees to pay for this treatment and to follow the recommendations provided by the referral dentist.

Id. at ¶4. The plaintiff states that on June 6, 2019, he was taken to Princeton Dental Care where a referral dentist examined his teeth. Id. at ¶5. The doctor allegedly told the plaintiff that he needed more work done on his molar, and that he had several cavities near the gum lines of his upper and lower teeth. Id. The plaintiff alleges that "[a]pproximately three months later," he was taken to Dental Associates, Ltd., to begin his treatment. Id. at ¶6. The dentist allegedly told the plaintiff that due to the amount of dental work, he would need to divide it up over at least two appointments; he then filled several cavities on one side of the plaintiff's mouth. Id. The plaintiff alleges that a few weeks after his appointment, he received a pass to the HSU, where a staff member opened his mail and told him that it was a bill from the outside dental provider and that she would forward it to the appropriate party for payment. Id. at ¶7. The plaintiff alleges that he did not get sent out for further treatment in 2019. Id. a ¶8.

The plaintiff alleges that in 2020, he was not sent out to the dentist, and he acknowledges that this could be attributed to Covid-19 for "a few months of 2020[.]" Id. at ¶9. He says that near the end of 2020, he asked if he was still on the list to go out and "he was told that the last HSU had heard there was an issue with a bill not being paid by the DOC." Id.

The plaintiff alleges that in Case No. 14-cv-1157, due to oversight, the parties had failed to file the necessary documents to allow the court to dismiss the case and that on January 20, 2021, the court ordered the parties to file

settlement documents or show cause for failing to do so. Id. at ¶10. The plaintiff alleges that on February 16, 2021, the case was dismissed.[1] Id. at ¶11.

The plaintiff alleges that in April of 2021, he checked his credit report and learned that Americollect, a collections agency, had reported that he failed to pay a 2019 bill owed to Dental Associates. Id. at ¶12. He states that an "MPAA" at Green Bay had opened the bill addressed to him in 2019 and that "it was an MPAA who told the plaintiff that they had the impression that a dental bill had not been paid." Id. at ¶13. The plaintiff alleges that shortly after he checked his credit report, he received a letter from Americollect seeking payment for the overdue dental bill, and that this correspondence confirmed that they had sent him at least two other letters about the debt. Id. at ¶15. The plaintiff states that, "[u]pon information and belief, the Doe defendants intercepted the subsequent bills and correspondence from Dental Associates and Americollect in an effort to hide the fact that a bill had not been paid and was attached to the plaintiff, personally." Id. at ¶16.

The plaintiff alleges that, "[n]ow with confirmation that the Defendants had breached their agreement, the plaintiff filed a Rule 60(b) motion in '1157 seeking to reopen the case based on the post-settlement conduct of the Defendants." Id. at ¶17. He states that in the defendants' July 2021 response to his Rule 60(b) motion, they admitted that "for reasons the DOC has been

---

[1] The parties filed a joint stipulation for dismissal on February 12, 2021. Howard v. Schrubbe, Case No. 14-cv-1157-PP, Dkt. No. 58 (E.D. Wis.). The plaintiff was represented by court-recruited *pro bono* counsel.

unable to determine" they failed to pay a bill from Dental Associates and that "due to oversight or error" the plaintiff had not been sent back to Dental Associates for the remainder of his treatment. Id. at ¶19. The plaintiff states that "the defendants declared that they would pay the outstanding bill which had negatively affected the plaintiff's credit report for nearly two years and that they would schedule the plaintiff to receive the remaining treatment, however, because it had been over a year since he had seen the dentist the plaintiff would have to go for a check-up visit prior to actually receiving further treatment." Id. at ¶20.

The plaintiff alleges that in July 2021 he returned to Dental Associates to have the prerequisite check-up and he was informed that he had three more cavities. Id. at ¶21. The plaintiff allegedly told the dentist that since his last visit he had started to experience pain around the molars on the right side of his mouth in addition to the pain and sensitivity he had previously reported. Id.

The plaintiff alleges that in November 2021 he was transferred from Green Bay to Fox Lake Correctional Institution. Id. at ¶22. He says that he immediately wrote to the HSU and asked them to contact the dental director at the Department of Corrections' Bureau of Health Services to confirm that he was still on the approval list to see an outside dental provider, and they replied that the director was on vacation and they would ask upon his return. Id. The plaintiff states that to date (the complaint is dated June 14, 2022), he has not received any communication from the defendants or HSU concerning his

request to receive further treatment as agreed to in 2019. Id. at ¶23. He says he continues to suffer pain when eating or drinking cold beverages and that the "decade+ old cavities" continue to worsen without treatment. Id. at ¶24.

The plaintiff claims:

> In addition to the original claims of deliberate indifference asserted in '1157, Defendants DeLap, Schettle, and Schrubbe further displayed deliberate indifference to the plaintiff's known serious dental needs when they failed to arrange for treatment of his cavities following his 2019 visit to Dental Associates in violation of the Eighth amendment.
>
> Upon information and belief, Defendants DeLap, Schettle and Schrubbe further retaliated against the plaintiff in response to him filing complaints and '1157 by ensuring that he did not fully receive treatment following his 2019 visit to Dental Associates in violation of the First Amendment.
>
> Defendants DeLap, Schettle, and Schrubbe breached the April 4, 2019 settlement agreement when they failed to provide further dental treatment following his 2019 visit to Dental Associates and when they failed to pay for the partial treatment that he received as agreed to in the attached agreement.
>
> . . .
>
> Upon information and belief, Does 1-4, who are MPAA's at GBCI HSU, conspired to retaliate against the plaintiff in response to his complaints and lawsuits against HSU, by taking steps to ensure that he did not get sent out for further dental treatment and that bills from his 2019 visit to Dental Associates went unpaid, and that he did not receive any mail from Dental Associates or Americollect Collections, in violation of the First Amendment.
>
> Upon information and belief, Does 4-8, who are employed at GBCI's Business Office, conspired to retaliate against the plaintiff in response to his complaints and lawsuits against GBCI Business Office staff, by taking steps to ensure that he did not get sent out for further dental treatment and that bills from his 2019 visit to Dental Associates went unpaid, and that he did not receive any mail from Dental Associates or Americollect Collections, in violation of the First Amendment.

8

> As a result of the conduct and deliberate indifference of Does 1-8, plaintiff's known serious dental needs have gone untreated since 2019, in violation of the 8th amendment.

Id. at ¶¶26-31.

C. <u>Analysis</u>

The plaintiff's complaint rehashes allegations from his other case, 14-cv-1157, and discusses how he believes the defendants in that case breached the settlement agreement. As described above, in April 2019 the parties signed a settlement agreement in 14-cv-1157 and on February 16, 2021, the court approved the parties' joint stipulation of dismissal and dismissed the case. On May 7, 2021, the plaintiff filed his Rule 60(b) motion in which he sought to reopen Case No. 14-cv-1157 because the defendants allegedly breached the settlement agreement. When the court denied the plaintiff's Rule 60(b) motion, it explained that it lacked jurisdiction to reopen the case:

> The court dismissed this case with prejudice under the terms of the parties' stipulation for dismissal; it did not retain jurisdiction to enforce the terms of the settlement. The court lacks jurisdiction to vacate the dismissal and will not reopen this case. <u>Magruder v. Fid. Brokerage Servs. LLC</u>, 818 F.3d 285, 288 (7th Cir. 2016) ("[I]f parties settle litigation that arose under federal law, any contest about that settlement needs an independent jurisdictional basis."). "A disagreement about whether parties to a settlement have honored their commitments is a contract dispute." <u>See</u> <u>Jones v. Ass'n of Flight Attendants-CWA</u>, 778 F.3d 571, 573 (7th Cir. 2015) (citing <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, at 378, 381 (1994)). The court does not have diversity jurisdiction under 28 U.S.C. §1332 and it therefore lacks subject matter jurisdiction over any contract dispute. The court will deny the plaintiff's motion to vacate.
>
> As for the plaintiff's assertions that there were other cavities that he did not learn of until after the settlement, if he wants to pursue a cause of action regarding those injuries, he must do so in a separate lawsuit.

Howard v. Schrubbe, Case No. 14-cv-1157, Dkt. No. 69 at 3. If the plaintiff wants to pursue a claim that the defendants breached the settlement agreement in Case No. 14-cv-1157, he must pursue such a claim in state court.

The plaintiff claims that in addition to his allegations that the defendants breached the settlement agreement in Case No. 14-cv-1157, DeLap, Schettle and Schrubbe "further displayed deliberate indifference to the plaintiff's known serious dental needs when they failed to arrange for treatment of his cavities following his 2019 visit to Dental Associates" and "retaliated against the plaintiff in response to him filing complaints and '1157 by ensuring that he did not fully receive treatment following his 2019 visit to Dental Associates." Dkt. No. 1 at ¶¶25-26. These conclusory allegations against DeLap, Schettle and Schrubbe simply describe how or why the plaintiff believes they breached the settlement agreement. The plaintiff does not make any new allegations against DeLap, Schettle and Schrubbe for conduct they engaged in that he believes violated his constitutional rights. The complaint does not contain any allegations against DeLap, Schettle and Schrubbe that do not relate to their alleged breach of the settlement agreement in Case No. 14-cv-1157. The plaintiff fails to state a claim for relief against DeLap, Schettle and Schrubbe under §1983 and he may not proceed against them on his breach of settlement claim.

The plaintiff also claims that the Doe defendants conspired to retaliate against him in response to his complaints and lawsuits against the HSU. These

allegations also relate to the plaintiff's belief that the settlement agreement in Case No. 14-cv-1157 was breached. The complaint's only specific allegation against a Doe defendant is that a few weeks after the plaintiff's 2019 appointment with Dental Associates, he received a pass to the HSU, where a staff member opened his mail and told him that it was bill from the outside dental provider and that she would forward it to the appropriate party for payment. Dkt. No. 1 at ¶7. Based on this, the plaintiff alleges that, "[u]pon information and belief, the Doe defendants intercepted the subsequent bills and correspondence from Dental Associates and Americollect in an effort to hide the fact that a bill had not been paid and was attached to the plaintiff, personally." Id. at ¶16. Next, the plaintiff alleges that, "[n]ow with confirmation that the Defendants had breached their agreement, the plaintiff filed a Rule 60(b) motion in '1157 seeking to reopen the case based on the post-settlement conduct of the Defendants." Id. at ¶17.

The plaintiff raised these allegations in his Rule 60(b) motion in Case No. 14-cv-1157 (although he didn't attribute them to the Doe defendant Green Bay MPAA staff and Green Bay business office staff). This complaint is another attempt to litigate his claim that the defendants breached the settlement agreement in Case No. 14-cv-1157. The court previously told him that he cannot do this

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim

11

for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The plaintiff's allegations against the Doe defendants are entirely speculative and do not support a claim for relief. The plaintiff has not alleged misconduct with any specificity such that the court could infer that any Doe defendants violated the plaintiff's constitutional rights.

The plaintiff has not stated a plausible claim for relief under federal law. Thus, the court lacks jurisdiction based on a federal question. See 28 U.S.C. §1331. If the plaintiff believes that Green Bay MPAA and business office staff had a hand in the alleged breach of the settlement agreement in Case No. 14-cv-1157, he has the option to include those allegations if he decides to file a breach of settlement claim in state court. He may not raise them in this court.

The plaintiff does not allege the citizenship of the named defendants, nor does he allege an amount in controversy exceeding $75,000 to satisfy diversity jurisdiction. See 28 U.S.C. §1332. Regarding the named defendants, the plaintiff alleges only where they used to work; given the length of time that has passed since the complaint allegations in Case No. 14-cv-1157, it is possible that the named defendants no longer work for the Wisconsin Department of Corrections and/or no longer reside in Wisconsin. Based on the terms of the settlement agreement, which the plaintiff attached to his complaint in this case

12

(Dkt. No. 1 at 9-12), the amount in controversy of a contract dispute based on breach of the settlement agreement would not exceed $75,000. See Herrnreiter v. Chi. Hous. Auth., 281 F.3d 634, 636–37 (7th Cir. 2002) ("A settlement agreement is a contract, and when parties to a contract ask a court to interpret and enforce their agreement, the contract enters the record of the case . . . ."). The terms of the settlement agreement call for, in relevant part, a payment of $8,500 from the defendants to the plaintiff, waiver of the plaintiff's legal loan debts, referral of the plaintiff to a dentist, withholding of 25% of the plaintiff's settlement check for restitution to the DOC and each party to pay their own costs and attorneys' fees. Dkt. No. 1 at 9-12. Because the amount in controversy does not exceed $75,000, the court lacks diversity of citizenship jurisdiction over the plaintiff's state law claim even if the defendants live in different states than the plaintiff. See 28 U.S.C. §1332. The court makes no determination on the merits of any state law claim the plaintiff may have.

The complaint fails to state a claim under federal law and the court lacks jurisdiction over the plaintiff's state law claim. Accordingly, the court must dismiss this case for lack of subject matter jurisdiction.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The clerk will enter judgment accordingly.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.72** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of

the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**